UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

MARIA TALAVERA, : 08-CV-4650 (ARR)

                Plaintiff, : NOT FOR PRINT OR
: ELECTRONIC
   -against- : PUBLICATION

MICHAEL J. ASTRUE : OPINION & ORDER
Commissioner of Social Security,

                Defendant. :
------------------------------------------------------------------ X

ROSS, United States District Judge:

Plaintiff, Maria Talavera, seeks judicial review of the decision of the Commissioner of Social Security that she was not disabled under the Social Security Act (the "Act") for purposes of receiving Supplemental Security Income ("SSI"). The Commissioner moves for judgment on the pleadings, and plaintiff filed a cross-motion. For the reasons explained below, the court denies defendant's motion, and remands the case to the Commissioner for further proceedings.

## BACKGROUND

A. *Procedural History*

    1. Plaintiff's First Hearing

Plaintiff applied for SSI disability benefits at the age of 32 on August, 5, 1999. (A.R. 89.) Plaintiff claimed an impairment due to "numbness, pain" in her lower back, radiating to her hip and legs, and migraine headaches. (A.R. 155, 157-58.) The Commissioner denied the application at the initial level and upon reconsideration, and plaintiff subsequently requested a hearing. (A.R. 89, 90, 116-20, 122-24.) On April 27, 2001, a hearing was held before ALJ Edward J. McNeil, and on August 17, 2001, the ALJ found that plaintiff was not disabled. (A.R.

1

91-98.) The ALJ stated that "[t]he evidence of record is convincing that if claimant were to lose weight as instructed by her doctors, her pain would cease. . . . Essentially, claimant's restricted activities of daily living are self-imposed." (A.R. 97.) On February 6, 2002, the Appeals Council granted plaintiff's request for review, vacated the ALJ's decision, and remanded the case for further proceedings. (A.R. 130-35.) The Appeals Council stated that on remand, the ALJ should provide an adequate evaluation "of treating and examining source opinions concerning the claimant's morbid obesity pursuant to Social Security Ruling 00-3p." (A.R. 134.) The Council also stated that the ALJ should address plaintiff's "subjective complaints of fatigue, tiredness, and shortness of breath due to obesity." (A.R. 134.)

2. Plaintiff's Second Hearing

A second hearing was held before ALJ Seymour Fier on March 5, 2003. (A.R. 46-57.) The ALJ concluded on May 15, 2003 that plaintiff was not disabled. (A.R. 100-09.) On January 15, 2004, the Appeals Council vacated the ALJ decision denying benefits and remanded the case for further administrative proceedings. (A.R. 112-15.) The Appeals Council stated that the case was previously remanded for "further assessment of the claimant's treating and examining source opinions concerning her morbid obesity, subjective complaints of tiredness, fatigue, and shortness of breath due to obesity. . . . The hearing decision does not assess the effects of claimant's obesity on her ability to perform work related activities and does not address the claimant's subjective complaints . . . ." (A.R. 113.) The Appeals Council stated that the ALJ was to contact "Dr. Bariso to clarify his treatment relationship with claimant and will reassess Dr. Bariso's medical opinions," and repeated that the ALJ was to assess plaintiff's "subjective complaints of tiredness, fatigue, and shortness of breath due to her morbid obesity and any limiting effects they have on her ability to perform work related activities." (A.R. 114.)

2

### 3. Plaintiff's Third Hearing

A third hearing was held before ALJ Fier on October 5, 2004. (A.R. 62-88.) Plaintiff testified as to her pain, and stated that she was told "that I have something that they call fibromyalgia." (A.R. 67-68.) She stated that at home, her older children take care of themselves and that they and her mother help out with her youngest child. (A.R. 69.) A medical expert, Dr. Cohen, and a vocational expert, Andrew Pasternack, also testified. The ALJ denied plaintiff's benefit claim on April 21, 2005, finding that plaintiff was not disabled and could perform a full range of light work. (A.R. 19.) The Appeals Council denied plaintiff's request for review on August 11, 2005. (A.R. 8-11.)

Plaintiff then commenced an action in this court. Talavera v. Commissioner of Social Security, 05-cv-4964 (SLT). By Stipulation and Order entered September 27, 2006, the court remanded the case to the Commissioner for further administrative proceedings. On February 1, 2007, the Appeals Council vacated ALJ Fier's decision, and remanded the case for further administrative proceedings. (A.R. 413-17.) The Council stated that "[a]lthough in prior remands dated February 6, 2002 and January 15, 2004 . . . the Appeals Council directed the Administrative Law Judge to evaluate the claimant's obesity under applicable Social Security Ruling 00-3p (that was later amended by Social Security Ruling 02-1p) and to evaluate the claimant's subjective complaints of fatigue, tiredness and shortness of breath due to obesity, the Administrative Law Judge did not do so." (A.R. 415.) The Appeals Council also noted that the ALJ failed to address a number of medical reports, including treating physician "Dr. Dista's [sic] diagnosis of fibromyalgia or consider its effect on the claimant's ability to perform work-related activities." (A.R. 415.)

4. <u>Plaintiff's Fourth Hearing</u>

A fourth hearing took place before ALJ Manuel Cofresi on June 10, 2008 (A.R. 420-37.) A medical expert, Dr. Lombardi, reviewed a number of medical reports in the record, including reports from treating physician Dr. Bariso, dated April 24, 2001, which "opined a RFC of sit two hours in an eight hour day, stand a total of a half hour in an eight hour day . . . and lift/carry nine pounds. He also indicated the claimant had spells of headaches, the fact that she's on Celebrex and another medication . . . but there is no comprehensive physical exam on this particular report." (A.R. 429.) On cross-examination, the medical expert also noted the report of Dr. Disla, stating that the RFC indicated in the report is "very low." Dr. Lombardi stated that he could not determine how Dr. Disla arrived at the RFC, stating that "[t]here's nothing to support his RFC, no." Dr. Lombardi also acknowledged a report from treating physician Dr. Lim. (A.R. 432.)

The medical expert also stated that "the record indicates that [plaintiff's] obesity is contributing to her problem," but would not estimate "to what degree" obesity affected plaintiff. (A.R. 429.) The expert stated that "[o]ffhand it would restrict motion because of the girth of her extremities. That would definitely limit her, and her trunk." (A.R. 429-30.) Dr. Lombardi also stated that fibromyalgia "is not a wastebasket diagnosis. It's a definite diagnosis and there are a certain set of criteria to make that diagnosis. Unfortunately, I don't really see that well-outlined in the record." (A.R. 430-31.)

A vocational expert also testified at the hearing, and stated that plaintiff had no relevant past work. (A.R. 435.) The expert also stated that a person with the capacity to work at the sedentary and light exertional levels could perform jobs such as Cashier, Telephone Solicitor, Dispatcher and Messenger. (A.R. 435.)

On June 25, 2008, ALJ Cofresi denied plaintiff's claim. (A.R. 361-77.) The ALJ found

4

that plaintiff "has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b)." (A.R. 372.) The ALJ took "into account the opinions of the claimant's personal physicians, in particular Dr. Bariso and Dr. Dilsa," but found that they "failed to provide treatment record [sic] to support their contentions." (A.R. 375.) Specifically, the ALJ found:

> In their reports they fail to set forth any objective medical information that might confirm their statements. Instead, they repeat the claimant's subjective complaints, set forth a series of diagnoses, and declare that the claimant's residual functional capacity to be for less than the full range of sedentary work . . . . Further, the objective evidence which is available is not consistent with the opinions of these physicians."

(A.R. 375.) The ALJ stated that "[t]here is simply not enough evidence to support the statement of Dr. Bariso and Dr. Disla, while an overwhelming body of evidence stands in contradiction to those opinions. They cannot be granted great or controlling weight." (A.R. 376.)

The ALJ also found plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms to not be "credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." (A.R. 374.) The ALJ stated that plaintiff "is independent in self care, helps maintain her household, and she shares for family members . . . . Given these factors, the claimant is not entirely credible." (A.R. 374.) As to her obesity, the ALJ stated that "[t]he claimiant also has a history of hypertension and obesity. However, overall her blood pressure has been within normal range, and there is no indication of end organ involvement." (A.R. 372.)

While it is unclear from the record whether plaintiff's request for review was denied, or whether plaintiff never filed exceptions to the ALJ's decision, regardless, the ALJ's decision

5

became the final decision of the Commissioner.[1] Plaintiff then commenced this action on November 17, 2008.[2]

### 5. Summary of Medical Evidence

In the June 25, 2008 decision, the ALJ discussed the following medical evidence: (a) consultative examinations by Dr. Fajardo in February 1998; (b) treatment records from Western Queens Community Hospital from 1997, and March 1998; (c) records from Cabrini East Village Family Medical Practice from August 12, 1999 to September 27, 1999; (d) an examination by Dr. Soo Park, a state agency medical consultant, on October 15, 1999; (e) reports from two examinations conducted by Dr. Mohammed Khattak, dated September 27, 1999 and February 28, 2000;[3] (f) a report from a treating physician, Dr. S. Tikko from March 28, 2000; (g) a report from treating physician Dr. C. Bariso dated April 24, 2001; (h) a report from treating physician Dr. E. Disla dated August 19, 2004; (i) a report from treating physician Dr. J. Lim dated September 29, 2004; (j) an August 4, 2004 examination from state agency medical consultant Dr. Antonio De Leon; (k) an August 4, 2004 examination from state agency medical consultant Dr. K. Seo; and (l) MRI testing conducted on May 12, 2008.

---

[1] See A.R. 360 (Letter to Appeals Council seeking extension of time to file exceptions). Because the ALJ's decision followed a remand, the ALJ's decision became final even if plaintiff did not file exceptions sixty days following the date of the decision. See A.R. 362 ("If you do not file written exceptions and the Appeals Council does not act on its own motion, the decision of the Administrative Law Judge will become the final decision of the Commissioner after remand on the 61st day after the date of this notice.").

[2] It is unclear from the record whether the action was filed within the 60 day period following a final decision. A court action challenging the Commissioner's final decision is required to be brought within 60 days after notice of such final decision is received. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(c). "Because the 60-day time limit defines that terms on which the United States waives its sovereign immunity and consents to be sued, it is strictly construed." Bowen v. City of New York, 476 U.S. 467, 479 (1986). Nevertheless, the 60-day period "is not jurisdictional, but rather constitutes a period of limitations," id. at 478, and was intended by Congress to be "'unusually protective' of claimants." Id. at 478. As such, the 60-day limitations period is waivable by the parties. Weinberger v. Salfi, 422 U.S. 749, 763-64, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Since defendant has not raised a timeliness issue, the limitations period is deemed to have been waived.

[3] At the hearing, the ALJ stated to the medical expert that "Dr. Cattack [sic] you're to disregard altogether." (A.R. 421.) However, as discussed below, the ALJ did discuss the opinion of Dr. Khattak in the written decision. (A.R. 375.)

6

## DISCUSSION

A. *Standard of Review*

This case comes to the court for review of the Commissioner's decision that the plaintiff is not disabled.

> Under the Social Security Act, a "disability" is defined as inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1). An individual is considered to be under a "disability" if his impairment is of such severity that he is unable to perform his previous work and, given his age, education, and work experience he is not able to engage in any other type of substantial gainful employment in the national economy. See 42 U.S.C. § 423(d)(2)(A). In determining whether an individual is disabled, the Commissioner is to consider both objective and subjective factors, including "objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain and disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience." Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980) (citations omitted).

In order to establish disability under the Act, a claimant must prove that (1) he is unable to engage in substantial gainful activity by reason of a physical or mental impairment expected to result in death or that had lasted or could be expected to last for a continuous period of at least twelve months; and (2) the existence of such impairment was demonstrated by medically acceptable clinical and laboratory techniques. 42 U.S.C. §§ 423(d), 1382c(a)(3); see also Shin v. Apfel, 1998 WL 788780 at *5 (S.D.N.Y. November 12, 1998) (citing cases).

The SSA has promulgated a five step process for evaluating disability claims. See 20

C.F.R. § 416.920. The Second Circuit has characterized this procedure as follows:

> "First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful employment. If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform."

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)) (brackets and alteration in original). The plaintiff has the burden of establishing disability on the first four steps of this analysis. On the fifth step, however, the burden shifts to the Commissioner. See Bluvband v. Heckler, 730 F.2d 886, 891 (2d Cir. 1984).

The court's role in reviewing the decisions of the Social Security Administration ("SSA") is narrowly confined to assessing whether the Commissioner applied the correct legal standards in making his determination and whether that determination is supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Donato v. Secretary, 721 F.2d 414, 418 (2d Cir. 1983). Substantial evidence is defined as "more than a mere scintilla[:]" it is evidence that a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389 (1971) (citation omitted). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. See Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999). Accordingly, the reviewing court may not "substitute its own judgment for that of the Secretary, even if it might have reached a different result upon a de novo review." Jones v. Sullivan, 949 F.2d 57, 59 (2d

Cir. 1991) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)).

B. The ALJ's Findings Regarding the Reports of Plaintiff's Treating Physicians

I find that the ALJ committed error by dismissing opinions by treating physicians without fully developing the record. "The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999); 20 C.F.R. § 416.927(d)(2). An ALJ is required to provide "good reasons" to accord the opinion other than controlling weight. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). Only if the Commissioner explains his reasoning, and that reasoning is supported by substantial evidence, may the Commissioner discredit the opinion of a treating physician. See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

In this case, the record contains a report from treating physician Dr. Ceasar Bariso and a report from treating physician Dr. Eddy Disla. (A.R. 338-39; 352-55.) In his report of April 24, 2001, Dr. Basiro stated that he had been treating plaintiff since 1996. Dr. Bariso diagnosed plaintiff with "degenerative osteoarthritis of the dorsal and lumbar spine" and "discogenic disease at L4-L5." (A.R. 352.) Where the report states that that "[t]he diagnoses have been confirmed by the following test results and/or clinical observations," the doctor wrote "X-rays + MRI." (A.R. 352.) An x-ray report was attached to the report, prepared by a radiologist. (A.R. 355.) Dr. Bariso's report stated that plaintiff's treatment consists of "Soma, Celebrex, and Esgic Plus." (A.R. 352.) The report also stated that the plaintiff's symptoms included "severe back pain from the waist level down to the sacrum." (A.R. 353.) The report also states that because of her medical conditions, plaintiff has "the following functional limitations: Sit a total of 2 hrs in

9

an eight hour day; Stand a total of ½ hr in an eight hour day," and a lift and carry capacity of less than five pounds. (A.R. 353.)

In a report dated August 19, 2004, Dr. Eddy Disla stated that she had treated plaintiff since 1999. (A.R. 343.) The plaintiff was diagnosed with osteoarthritis ("OA"), sciatica at the right lower extremity ("RLE"), and a "[f]ibromyalgia like syndrome." (A.R. 343.) The report indicates that the diagnoses have been confirmed by X-rays and "MRI LS Spine." (A.R. 343.) Plaintiff had been started on Amitriptyline, and anti-depressant. (A.R. 343.) Dr. Disla's indications of plaintiff's functional limitations were similar to Dr. Bariso's. (A.R. 343.) The report also indicated that plaintiff's "weight" was likely a "contributing factor to exacerbate her symptoms." (A.R. 344.)

Also in the record was a September 29, 2004 letter from Dr. Jocelyn Lim, another treating physician at the Cabrini East Village Family Medical Practice, who wrote that plaintiff had been diagnosed with chronic lower back pain with right lower extremity radiculopathy, migraine headaches, hypertension, fibromyalgia, osteoarthritis, and osteoporosis. (A.R. 336.) Dr. Lim noted that an x-ray of plaintiff's lumbar spine showed posterior facet arthopathy at the L4-L5 and L5-S1 levels and slight osteoporosis. (A.R. 336.)

The ALJ acknowledged the weight generally provided to treating source medical opinions, and stated that a controlling weight "may not be given at all to a treating source opinion unless it is well supported by medically acceptable clinical and laboratory diagnostic techniques." (A.R. 374.) The ALJ then stated that "[b]oth Dr. Bariso and Dr. Disla failed to provide treatment record [sic] to support their contentions," and that "they fail to set forth any objective medical information that might confirm their statements." (A.R. 375.) The ALJ also stated that "Dr. Lombardi pointed this pertinent fact out during his hearing testimony." (A.R.

375.) At the hearing, Dr. Lombardi stated that fibromyalgia "is not a wastebasket diagnosis. It's a definite diagnosis and there are a certain set of criteria to make that diagnosis. Unfortunately, I don't really see that well-outlined in the record." (A.R. 430-31.) While the ALJ did discuss records from Cabrini, he did not address the September 24, 2004 letter from Dr. Lim, and in fact stated that those records showed no radiculopathy. (A.R. 375.)

An ALJ "cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." Rosa, 168 F.3d at 79. Instead, the ALJ "has an affirmative duty to develop the administrative record, regardless of whether the claimant is proceeding *pro se* or is represented by counsel." Tavarez v. Barnhart, 124 F. App'x 48, 49 (2d Cir. 2005) (citing Rosa, 168 F.3d at 79; Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)); see also Amrod v. Commissioner of Social Sec., 2010 WL 55934, at *13 (N.D.N.Y. 2010) ("'Further development of the record is also required when an ALJ determines that a treating physician's opinion is not well supported by medically acceptable diagnostic and clinical evidence."). "[I]f the evidence does not support a treating source's opinion on any issue reserved to the Commissioner [such as the residual functional capacity assessment] and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." Social Security Ruling 96-5p, 1996 SSR LEXIS 2 (1996). Here, there is no evidence in the record that the ALJ attempted to contact Drs. Bariso, Disla, or Lim regarding the lack of records or support for their contentions, or otherwise seek to supplement the record to fill in the gaps he found to exist.

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician," courts have declined to give controlling weight to those

11

opinions where they are "not consistent with other substantial evidence in the record...." Halloran, 362 F.3d at 32. "It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence . . . and the report of a consultative physician may constitute such evidence." Mongeur v. Hecklerd, 722 F.2d 1033, 1039 (2d Cir. 1983) (citations omitted). In this case, in declining to give the opinions of Drs. Bariso and Disla controlling weight, the ALJ stated that "the objective evidence which is available is not consistent with the opinions of" plaintiff's treating physicians. (A.R. 375.) The ALJ relied on the report of another treating physician, Dr. Tikko, which he found to contradict the opinions of Dr. Bariso and Dr. Disla. (A.R. 375.) Dr. Tikko found that plaintiff could walk without assistance, examined x-rays and an August 1999 MRI, did not detect any muscle spasm, and opined that plaintiff could lift or carry as many as 30 pounds occasionally, and could sit for as many as six hours in an eight hour day. (A.R. 347-48.) The ALJ additionally relied on clinical records and evidence from consultative physicians Dr. Fajardo, Dr. Park, Dr. De Leon, and Dr. Seo, all of whom found no to mild restrictions on sitting, standing and movement.

Such evidence does appear to be conflicting. However, while it is the province of the ALJ to weigh all evidence and resolve material conflicts in the evidence, Schaal v. Apfel, 134 F.3d 496 (2d Cir. 1998), I cannot find that the ALJ can adequately resolve such conflicts in the absence of a full and complete record with respect to the reports from plaintiff's treating physicians.

The lack of a full record is further exacerbated by other factors. First, the Appeals Council in its remand order of February 1, 2007 specifically directed the ALJ to address "Dr. Dista's [sic] diagnosis of fibromyalgia or consider its effect on the claimant's ability to perform work-related activities." (A.R. 415.) The ALJ did mention the diagnosis of a "fibromyalgia-like

syndrome," (A.R. 372), but did not seek to supplement the record regarding that diagnosis, did not discuss Dr. Lim's diagnosis of fibromyalgia, and did not consider the effect of these diagnoses on plaintiff's ability to perform work. Further, at the hearing, the medical expert only stated that fibromyalgia "is not a wastebasket diagnosis. It's a definite diagnosis and there are a certain set of criteria to make that diagnosis. Unfortunately, I don't really see that well-outlined in the record." (A.R. 430-31.) Again, no attempt to supplement that record has been shown.

Second, the Appeals Council in its February 1, 2007 order stated that the ALJ was to "evaluate the severity of the claimant's morbid obesity" and "the claimant's obesity on her ability to perform work-related activities . . . ." (A.R. 416.) All previous remand orders in this matter have also stated that the ALJ is to evaluate plaintiff's obesity under the applicable Social Security ruling. (A.R. 114; 134; 415.) While the ALJ made references to plaintiff's obesity in the summary of medical findings, and did state that plaintiff has a history of obesity when addressing her residual functional capacity, he did not specifically address its severity or its affect on her ability to perform work-related activities. (A.R. 372.)

Finally, the ALJ does describe in detail the examination conducted by Dr. Mohammed Khattak, (A.R. 369), and appears to rely in part on his findings in concluding that the reports of plaintiff's treating physicians were not consistent with the substantial evidence in the record. (A.R. 375.) While it is unclear to what extent the ALJ relied on Dr. Khattak's findings, courts in this District have questioned the reliability of reports created by Dr. Khattak, and have remanded matters to the Commissioner when reliance on his findings appears in the record. See, e.g., Harris v. Astrue, 2009 WL 2386039, at *17 (E.D.N.Y. 2009) (NGG) (finding that "a remand is needed to clarify the weight the ALJ gives to Dr. Khattak's opinion"); see also Lamar v. Barnhart, 373 F.Supp.2d 169, 177 (E.D.N.Y. 2005) (where the court described Dr. Khattak's

13

reports as "slipshod and specious" and "question[ed] the state's continued reliance on Dr. Khattak's 'medical' opinions").

Accordingly, for the reasons above, defendant's motion for judgment on the pleadings is denied, and the case is remanded to the Commissioner to further develop the record and for further proceedings consistent with the above.

C. The ALJ's Credibility Determination

This Court may not reweigh the evidence and substitute its views for those of the Commissioner so long as the proper legal principles were applied. See 42 U.S.C. § 405(g); Parker v. Harris, 626 F.2d 225, 231 (2d Cir.1980). "Inasmuch as it is the responsibility of the Secretary and not of a reviewing court to assess a claimant's credibility . . . and inasmuch as there is substantial evidence supporting the Secretary's assessment of [plaintiff's] credibility, that assessment should be affirmed." Battle v. Shalala, 1995 WL 312525, at *11 (S.D.N.Y. 1995) (citing Aponte v. Secretary of Health and Human Services, 728 F.2d 588, 591 (2d Cir. 1984)). When making a credibility determination, the ALJ has the obligation to consider "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3); see also Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010).

In this case, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible . . . ." (A.R. 374.) Because I have found that the ALJ did not fully develop the record, the ALJ shall on remand reconsider plaintiff's credibility in light of "all of the relevant medical and other evidence."

## CONCLUSION

The court recognizes the significant burden placed on ALJs who are charged not only with reaching independent, informed decisions on the basis of often complicated records, but also with fully developing those records and protecting the rights of claimants. The task is difficult and the court recognizes the diligent and thorough work performed by the ALJ in this case. Nevertheless, for the above stated reasons, the defendant's motion for judgment on the pleadings is denied and the case is remanded to the Commissioner for further proceedings consistent with this opinion. Plaintiff's motion to remand solely for a calculation of benefits is also denied.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

s/ ARR

Allyne R. Ross
United States District Judge

Dated: August 18, 2010
Brooklyn, New York

**Service List**

<u>Attorney for Plaintiff</u>:
William P. Gottlieb
Axelrod and Gottlieb
396 Broadway
Suite 902
New York, NY 10013

<u>Attorney for Defendant</u>:
Arthur Swerdloff
United States Attorney's Office
271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201